IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEPHEN DOUGLAS REAVES,           )
                                  )
                    Plaintiff,    )
                                  )
           v.                     )     1:19CV1120
                                  )
ANDREW SAUL,                      )
Commissioner of Social Security,  )
                                  )
                    Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephen Douglas Reaves ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on June 12, 2015, alleging a disability onset date of September 25, 2014. (Tr. at 13, 286-89.)[1] His claim was denied initially (Tr. at 67-84, 102-05), and that determination was upheld on reconsideration (Tr. at 85-101, 109-16). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 118-19.) A hearing scheduled for May 7, 2018 was postponed

---

[1] Transcript citations refer to the Administrative Record [Doc. #7].

when Plaintiff did not appear. (Tr. at 13, 60-66.) However, Plaintiff showed good cause for his failure to appear and, along with his attorney and an impartial vocational expert, attended a subsequent hearing on August 1, 2018. (Tr. at 13.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 25), and, on September 10, 2019, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since September 25, 2014, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

chronic liver disease, peripheral neuropathy, obesity, and alcohol use disorder[.]

(Tr. at 16.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 16-18.) Therefore, the ALJ assessed Plaintiff's RFC and determined that,

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

> based on all of [his] impairments, including the substance use disorder, [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitation: [Plaintiff] would not be able to meet the attendance requirements of competitive employment.

(Tr. at 18.) Because the "vocational expert testified to a required level of attendance at work that [Plaintiff] cannot meet while he is drinking," the ALJ determined at steps four and five of the sequential analysis that a finding of "disabled" was appropriate. (Tr. at 19-20.)

However, in accordance with the Act, the ALJ then considered the impact of Plaintiff's remaining impairments absent his substance use. Specifically, the ALJ found that, if Plaintiff stopped drinking alcohol, his remaining impairments would limit him to

> light work as defined in 20 CFR 404.1567(b) as he is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and no additional limitations on the ability to push and pull. [Plaintiff's] mental limitations would be non-severe in the absence of alcohol abuse.

(Tr. at 20.) At step four of the analysis, the ALJ determined that the exertional requirements of Plaintiff's past relevant work exceeded his RFC. (Tr. at 23.) Nevertheless, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy if he stopped his substance use. (Tr. at 24.) Therefore, the ALJ concluded that Plaintiff's

> substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 404.1535). Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. at 24.)

Plaintiff now raises four challenges to ALJ's decision. First, he argues that the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, or pace in accordance with the Fourth Circuit's decision Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). Second, Plaintiff contends that the ALJ erred by failing include Plaintiff's oseteoarthritis among his severe impairments at step two of the sequential analysis and by failing to develop the record regarding his osteoarthritis. Third, Plaintiff asserts that the RFC assessment is not supported by substantial evidence or the ALJ's narrative discussion. Fourth and finally, Plaintiff contends that the ALJ failed to properly evaluate the medical opinion of Plaintiff's treating physician, Dr. Nathan Sison. After a thorough review of the record, the Court finds that remand is required in light of the inadequacies in the ALJ's RFC assessment and particularly in the weighing of the opinion evidence.

For claims, like Plaintiff's, that are filed before March 27, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to her, generally "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)). And, under what is commonly referred to as the "treating physician rule," the ALJ generally accords the greatest weight—

controlling weight—to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with other substantial evidence in [the] case record," it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4; Brown, 873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[4] Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairments, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight

---

[4] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). This requires the ALJ to provide "sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted). Notably, "[w]hile an ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence, the ALJ may not cherry-pick trivial inconsistencies between a treating physician's opinion and the record or take evidence out of context to discount the physician's opinion." Meyer-Williams v. Colvin, 87 F. Supp. 3d 769, 772 (M.D.N.C. 2015) (internal citations and quotation omitted); see also Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.")).

The Fourth Circuit has recently confirmed the application of the treating physician rule in Arakas v. Commissioner, 983 F.3d 83 (4th Cir. 2020) and Dowling v. Commissioner, 986 F.3d 377 (4th Cir. 2021). In Arakas, the Fourth Circuit "emphasized that the treating physician rule is a robust one: '[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence.'" Arakas, 983 F.3d at 107 (quoting Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). Thus, "the opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or

9

laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." Id. (emphasis in original). Similarly, in Dowling, the Fourth Circuit emphasized that even if a "medical opinion was not entitled to controlling weight, it does not follow that the ALJ had free reign to attach whatever weight to that opinion that he deemed fit. The ALJ was required to consider each of the six 20 C.F.R. § 404.1527(c) factors before casting [treating physician] opinion aside. Dowling, 986 F.3d at 385. "While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." Id.

In the present case, Plaintiff's treating primary care physician, Dr. Nathan Sison, provided an opinion in a treatment record in February 2018 (Tr. at 1142) and in a six-page Medical Source Statement and separate letter in April 2018 (Tr. at 1255-61, 1262.) Dr. Sison had been treating Plaintiff approximately once a month since October 2017. At a visit in November 2017, Dr. Sison noted that Plaintiff had "severe peripheral neuropathy" due to alcohol use that "significantly limits his mobility." (Tr. at 1226.) In a February 2018 treatment record, Dr. Sison included a letter providing:

> [Plaintiff] is under my care as his primary care physician. He is unable to work consistently due to debilitating pain in his feet, legs, and hands. Please afford all due accommodations and exceptions to him as we work together to improve his quality of life and pain control.

(Tr. at 1142.) Two months later, in April 2018, Dr. Sison prepared another letter, which read:

> My name is Nathan Sison, MD and I am Stephen Douglas Reaves' primary care physician (DOB .../1970). I have been his physician since October 2017 and have seen him nearly monthly since then. In my medical opinion, Mr. Reaves has a painful and significant peripheral neuropathy in his feet and legs and

10

sever[ely] decreases the time and distance he can ambulate without severe pain. This has limited his ability to travel and work on a regular and meaningful basis.

(Tr. at 1262). Dr. Sison's medical records reflect monthly treatment visits for alcoholic peripheral neuropathy, with repeated increasing of Plaintiff's medications in an effort to control his pain without narcotic medications in light of his history of substance abuse. (Tr. at 1226-29, 1154-57, 1149-52, 1144-47, 1138-42, 1131-35, 1435-38, 1398-1400, 1456-58.) In his Medical Source Statement, Dr. Sison explained that he had been Plaintiff's primary care physician since October 2017, and that Plaintiff was diagnosed with "peripheral neuropathy, cirrhosis, anxiety disorder, panic disorder, and low back pain." (Tr. at 1255.) Dr. Sison described Plaintiff's symptoms as "bilateral leg pain, numbness, tingling, lower and middle back pain, unsteady gait, shoulder pain." (Tr. at 1255.) With respect to Plaintiff's pain, Dr. Sison explained that Plaintiff had "[b]urning, stinging pain in both feet. Numbness present in both legs from knees down. The symptoms are continuous but worsened with exertion. Stiff back in morning with pain, continuous shoulder pain bilaterally." (Tr. at 1255.) Dr. Sison noted that Plaintiff had sensory changes, tenderness, muscle spasm, and abnormal gait. (Tr. at 1255.) He then answered questions on the form reflecting that Plaintiff's pain was "frequently" severe enough to interfere with attention and concentration, that Plaintiff suffered from a "marked limitation" in his ability to deal with work stress, that the longest he could sit in a work position at a desk was 3 hours and the total he could sit during an 8 hour work day was 3 hours, that the longest he could stand or walk was 15 minutes at a time, that the total cumulate standing or walking was 3 hours in an 8-hour work day, and that he would require 4 hours of resting or lying down/reclining in an 8 hour work day. (Tr. at 1256-

11

58.) Dr. Sison further opined that Plaintiff could "never" lift and carry any weight, even 1-5 pounds, could never stoop, and could only occasionally rotate his neck. (Tr. at 1259.)

The ALJ addressed Dr. Sison's opinion along with the opinion of another treating provider, Dr. Shungu. Dr. Shungu provided a letter on June 1, 2017, explaining that:

> [Plaintiff] has lower extremity neuropathy which causes significant disability. He is unable to ambulate for any significant amount of distance without pain. This limits his ability to travel to and participate in gainful employment.

(Tr. at 795.) The ALJ analyzed all of this treating physician opinion evidence as follows:

> [The ALJ] gives little weight to the opinions of Nathan Sison, M.D., and Nicholas Shungu, M.D. Dr. Sison opined the claimant has limited ability to travel and work and has marked mental limitations. Dr. Shungu opined the claimant has limited ability to travel and engage in gainful employment. They did not provide an adequate explanation for their opinions. In addition, their opinions are not consistent with the medical evidence analyzed above. For example, both Dr. Forero and Dr. Burgess [the consultative examiners] opined the claimant is able to perform basic work activities. Further, the undersigned notes determination of disability is an issue reserved solely for the Commissioner. Therefore, the undersigned afforded little weight to these opinions.

(Tr. at 22-23 (internal citations omitted).) With respect to this analysis, it is true that the final determination of whether an individual is disabled is for the Commissioner. However, Dr. Sison included specific functional limitations in his Medical Source Statement, including that Plaintiff could stand and/or walk for a total of 3 hours per workday, not including rest periods, could sit no more than a cumulative total of 3 hours per workday, would require 4 hours per workday resting/reclining, and required further limitations as to balancing, stooping, and bending. (Tr. at 1257-59.) The ALJ did not address these specific functions in assigning Dr. Sison's opinion little weight. (Tr. at 22-23.) Instead, she more generally concluded that Dr. Sison's opinion did not include "adequate explanation" and was "not consistent with the

medical evidence analyzed above." (Tr. at 23). The ALJ considered a similar analysis at length in Dowling:

> The ALJ explained that he afforded only negligible weight to [the treating physician's] medical opinion because he found the opinion to be inconsistent with other evidence in the record, and the basis for the opinion was "not adequately explained" by [the treating physician]. This explanation by the ALJ touches on two of the Section 404.1527(c) factors -- consistency and supportability. However, there is no indication that the ALJ actually undertook the required analysis of [the treating physician] opinion. Indeed, the ALJ never so much as acknowledged the existence of the Section 404.1527(c) factors. Moreover, the ALJ was completely silent as to the remaining four Section 404.1527(c) factors; for instance, the ALJ considered neither the "[l]ength of the treatment relationship and the frequency of examination," nor the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2)(i)–(ii).
>
> The ALJ's failure to consider each of the Section 404.1527(c) factors was error. While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion. See Arakas, 983 F.3d at 107 n.16 ("20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." (emphasis in original)); Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) (agreeing with the "[s]everal federal courts [that] have concluded that an ALJ is required to consider each of the § 404.1527[c] factors" when weighing the medical opinion of a treating physician). In this case, it is far from apparent that the ALJ considered -- or was even aware of -- each of the Section 404.1527(c) factors. In addition to ignoring a majority of the specific factors, the ALJ's decision was bereft of any reference to the factors as a whole. The ALJ simply declared that he possessed "the discretion to give less [than controlling] weight" to the opinion of the treating physician. J.A. 15. The ALJ never so much as hinted that his discretion was checked by the factors enumerated in Section 404.1527(c), which it is. In failing to acknowledge and apply each of these six factors, the ALJ erred.

Dowling, 986 F.3d at 385-86; see also Arakas, 983 F.3d at 106 ("The ALJ's conclusion that '[t]he lack of substantial support from the other objective evidence of record render[ed] [Dr. Harper's] opinion less persuasive,' . . . was erroneous for multiple reasons. To start, it is vague and conclusory, as the ALJ did not specify what 'objective evidence' he was referring to. . . .

13

The ALJ's cursory explanation fell far short of his obligation to provide a narrative discussion [of] how the evidence support[ed] [his] conclusion, and [a]s such, the analysis is incomplete and precludes meaningful review." (internal quotations omitted)). In the present case, as in Dowling, even if the ALJ's general explanation provided a basis for not giving Dr. Sison's opinion controlling weight, "it does not follow that the ALJ had free reign to attach whatever weight to that opinion that [she] deemed fit," and there is no indication that the ALJ actually undertook the required analysis of each of the relevant factors. See Dowling, 986 F.3d at 385.

Moreover, in the present case, the only specific alleged inconsistency identified by the ALJ as to Plaintiff's physical limitations was the inconsistency of Dr. Sison's opinion with that of Dr. Forero, the consultative examiner, who the ALJ said "opined the claimant is able to perform basic work activities." (Tr. at 23.) However, even if a single examination by a consultative examiner were alone sufficient to reject a treating physician opinion, in this case Dr. Forero, the consultative examiner, found Plaintiff moderately limited in his ability to sit, stand, move about, lift, and carry. (Tr. at 22, 771-72.) Upon examination, Dr. Forero noted Plaintiff's poor balance, "decreased sensation in both lower extremities to the feet," difficulty rising from both seated and supine positions, and inability to walk heel to toe. (Tr. at 22, 771-72.) Dr. Forero also found, but the ALJ did not mention, that Plaintiff was unable to squat, had a significantly decreased range of motion in his knees and hips, could not walk a block at a reasonable pace on uneven terrain, and could only walk "about ½ block" before becoming fatigued and experiencing pain in his feet. (Tr. at 769, 772.) With respect to diagnosis and prognosis, Dr. Forero noted: "Peripheral Neuropathy – lower extremities causing permanent

14

pain and moderate disability." (Tr. at 772.)[5] The ALJ accorded Dr. Forero's opinions only "some weight" because the examiner "did not provide a specific function-by-function assessment of [Plaintiff's] abilities." (Tr. at 22.) However, even accepting this explanation, Dr. Forero's underlying findings clearly support some degree of postural and walking restrictions, both of which were ultimately omitted from Plaintiff's RFC, and it is not clear how Dr. Forero's opinion provides a basis for completing discounting the limitations found by treating physician Dr. Sison.[6]

Notably, the ALJ gave great weight only to the non-examining state agency medical consultants in formulating the RFC. In doing so, the ALJ explained as follows:

> The undersigned gives great weight to the assessments of the state agency medical consultants, which conclude the claimant is able to perform light work, with additional limitations (Ex. 1A, 13-15; Ex. 3A, 13-14). The state agency consultants are familiar with our program. In addition, the state agency consultants had an opportunity to view the claimant's conditions and their treatment as a whole. Further, the state agency consultants' assessments are generally consistent with the medical evidence analyzed above. For example, both Dr. Forero and Dr. Burgess [the consultative examiners] opined the claimant is able to perform basic work activities . . . The [RFC] as formulated above accounts for the claimant's problems with a limitation to light work, with additional limitations. Moreover, the current evidence does not support the inclusion of manipulative limitations. As discussed above, Dr. Forero found [the] ability to pinch, grasp, and manipulate and [a] normal range of motion of [the] bilateral wrists and hands.

---

[5] The Psychiatric Consultative Examiner, Ms. DeLarosa under supervision of Dr. Burgess, similarly noted that Plaintiff "ambulated slowly with a slight limp," and reported neuropathy and lower extremity pain. (Tr. at 774.)

[6] Notably, the ALJ failed to reconcile any of Dr. Forero's findings with her conclusion that Plaintiff could stand and walk for six hours in an eight-hour day with no postural limitations. The only reasons the ALJ gave for assigning Dr. Forero's opinion "some weight" were Dr. Forero's failure to provide a function-by-function assessment and the lack of clinical findings to support manipulative limitations. Neither of these reasons provide a basis to wholly discount Dr. Forero's underlying findings relating to Plaintiff's standing, walking, and postural difficulties.

(Tr. at 23.) The ALJ's discussion clearly implies that the State agency consultants included the same "additional limitations" in their assessments. However, upon review, striking differences appear between the two. The consultant on reconsideration, Dr. Evelyn Jimenez-Medina, opined restrictions identical to those ultimately included in the RFC, including the abilities to stand, walk, and sit for a total of 6 hours each in an eight-hour workday. (Tr. at 97-98.) Notably, Dr. Jiminez-Medina posited no additional postural or environmental limitations. (Tr. at 97.) In contrast, Dr. Quinlan, the initial consultant, opined that Plaintiff was limited to standing and/or walking for a total of 2 hours in an eight-hour workday. (Tr. at 79.) Dr. Quinlan further opined that, chiefly due to Plaintiff's poor balance, he was limited to only occasional stooping, kneeling, crouching, crawling, balancing, and climbing of ramps and stairs, and he should never climb ladders, ropes, or scaffolds. (Tr. at 79-80.) In terms of environmental limitations, Dr. Quinlan found that Plaintiff's balance issues would also preclude all work involving hazards such as machinery and unprotected heights, and that Plaintiff should avoid concentrated exposure to extreme temperatures and humidity due to his "chronic systemic disease." (Tr. at 80.)

Despite assigning "great weight" to the State agency opinions, the ALJ failed to acknowledge the inconsistencies between the two assessments, let alone explain why she favored the findings of Dr. Jiminez-Medina over those of Dr. Quinlan. The ALJ's failure to address the standing, walking, and postural limitations opined by Dr. Quinlan is particularly problematic given Plaintiff's documented difficulties in these areas, as described in his treatment notes, testimony, and the medical opinions of Drs. Forero and Sison, all of which the ALJ discounted in favor of the State agency assessments. See also Arakas, 983 F.3d at 110

16

("Moreover, under the factors listed in 20 C.F.R. § 404.1527(c), the ALJ's decision to assign greater weight to the non-examining, non-treating consultants' opinions than to [the treating physician's opinion] makes little sense. Under the regulation, greater weight is generally accorded to the medical opinion of a source who has examined the claimant; a source who has treated the claimant; and a specialist in the relevant area of medicine. 20 C.F.R. § 404.1527(c)(1), (2), (5).").

In sum, the ALJ's failure to adequately address the inconsistencies in the State agency consultants' opinions, coupled with her more general failure to fairly and adequately address the medical opinion evidence, particularly the treating physician opinions of Dr. Sison, resulted in a decision that is not fairly susceptible to judicial review, and a resulting RFC assessment that is unsupported by substantial evidence.[7] In light of the recommended remand, the Court need not address Plaintiff's additional contentions at this time.[8]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings

---

[7] The Court notes that it may well be that the limitations noted by Dr. Sison resulting from Plaintiff's alcoholic peripheral neuropathy, even if adopted in full, would not persist if Plaintiff stopped the substance use, and would therefore result in the same RFC adopted by the ALJ (with a similar conclusion that Plaintiff is not disabled for purposes of the Act). However, the ALJ did not undertake this analysis and the Court cannot do so in the first instance. This analysis must be undertaken by the ALJ, with further development of the record if necessary.

[8] The Court does note that the record includes some evidence of osteoarthritis not addressed by the ALJ. (See, e.g., Tr. at 1398, 1408, 1173, 1175.) On remand, the ALJ can fully consider all of the issues raised by Plaintiff on a complete record.

Case 1:19-cv-01120-TDS-JEP   Document 15   Filed 02/26/21   Page 17 of 18

[Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED to the extent set out herein.

This, the 26th day of February, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge